UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JENXYS LLANOS-OTERO, | : | |
| Plaintiff, | : | |
| | : | Civ. No. 23-3053 (KM) (MAH) |
| v. | : | |
| BECKY SCOTT, Director of Hudson County Correctional Facility, | : | **OPINION** |
| Defendant. | : | |

**KEVIN MCNULTY, U.S.D.J.**

Plaintiff Jenxys Llanos-Otero, a prisoner incarcerated at Garden State Youth Correctional Facility in Yardsville, New Jersey, seeks to commence a lawsuit pursuant to 42 U.S.C. § 1983, alleging that prison officials were deliberately indifferent to his serious medical needs. DE 1. He also moves to proceed *in forma pauperis* ("IFP"). DE 1-2. For the reasons below, the IFP motion is granted, and the complaint will be dismissed without prejudice.

A.  IFP

A prisoner seeking to file a civil action IFP must submit an affidavit, including a statement of all assets, stating that the prisoner is unable to pay the fee. 28 U.S.C. § 1915(a)(1). The prisoner also must submit a certified copy of his inmate trust fund account statement for the six-month period immediately preceding the filing of his complaint. 28 U.S.C. § 1915(a)(2). Llanos-Otero has complied with these requirements and demonstrated indigence. DE 1-2. Accordingly, IFP status is appropriate, and Llanos-Otero's IFP motion is granted.

B.  Factual Allegations

For screening purposes only, I accept the well-pleaded, plausible allegations in the complaint (DE 1) as true. The complaint alleges as follows.

During the events in question, Llanos-Otero was a pretrial detainee at the Hudson County Correctional Facility. DE 1 at 2. On November 10, 2022, while showering, he noticed a large pimple on the back of his right thigh. *Id.* at 8. The next morning he woke with pain in the location of the pimple and noticed that the pimple had doubled in size and was "completely black." *Id.* He informed "the guard on post," who told him to "write a sick call to medical." *Id.* This "really bothered" Llanos-Otero, because he had had a similar condition before, and he therefore knew that his condition "was beyond waiting for a reply." *Id.* at 8–9. He nonetheless submitted a request to be seen by medical staff. *Id.* at 9.

By late afternoon, his leg was swollen and "profusely red in coloration," which Llanos-Otero believed to be signs of "severe infection." *Id.* He complained to guards, who told him that he "would be seen the next when possible." *Id.* Llanos-Otero developed a fever that night; in the morning "the site of the blackened skin tissue had again almost doubled in size." *Id.* He showed a correctional officer who had seen the pimple the day before, who "immediately noticed the escalation and severity" of the condition and "personally called medical himself and told them he was sending me down immediately." *Id.* at 10.

A nurse practitioner named Fatima prescribed amoxicillin (an antibiotic) and ordered him to take it twice a day. *Id.* Llanos-Otero "pleaded" to be sent to the emergency room because of his past experience with this condition, but Fatima stated that he should give the medication "time to work." *Id.* Llanos-Otero then returned to his cell "in extreme pain." *Id.*

The next morning, Llanos-Otero again showed his leg to the same officer as the previous day, who again sent him to medical. *Id.* at 11. Llanos-Otero again pleaded to be sent to the emergency room; a nurse (a different nurse than the day before) again told him that he needed to give the medication time to work. *Id.* Llanos-Otero insisted he needed to be sent to the

emergency room, which agitated the nurse, and a shouting match ensued. *Id.* After the discussion had escalated to argument, Fatima—the nurse from the day before—entered and, upon examining the leg again, noticed that the infection had worsened and arranged for Llanos-Otero to be transported to the emergency room. *Id.* Llanos-Otero was transported to the emergency room and admitted to the hospital on November 11, 2022.[1] *Id.* at 13. He had a fever as high as 104.5, "was started on a cocktail of IV antibiotics," and eventually diagnosed with MRSA (methicillin-resistant Staphylococcus aureus), a type of staph infection that is resistant to many antibiotics. *Id.* He alleges that he was "operated on under anesthesia" and remained in the hospital for 8 days; upon his return to the prison on November 19 he was told that the antibiotic he required "wasn't kept in stock" and would need greater-than-ordinary approval because it was "fancy and expensive." *Id.* That antibiotic was not administered until November 21. *Id.* at 14. Llanos-Otero also alleges that the room to which he was returned was not properly disinfected, which placed him at an elevated risk because he had a "silver dollar sized open wound." *Id.* Llanos-Otero alleges in general that the prison medical staff was "incompetent" and that if he had been sent to the hospital earlier, as he had requested, his infection would have been less severe and he would have suffered less and had a better medical outcome. *Id.*

       The lone defendant named in the complaint is Becky Scott, who Llanos-Otero identifies as the director of the Hudson County Correctional Facility. *Id.* at 4. As to Scott, Llanos-Otero alleges: "After strict mandates and restrictions were put in place by the state, she allowed an insufficient level of protection to inmates' health." *Id.* There are no other allegations against Scott. Llanos-Otero seeks $200,000 in damages. *Id.* at 6.

---

[1] The dates in the complaint do not exactly align with the factual allegations. As recounted above, Llanos-Otero alleges that he first discovered the pimple on November 10, that two days passed, and that he was then transported to the the hospital and admitted on November 11. Regardless of the exact date, it seems clear that he was transported to the hospital within two days of the onset of his infection.

### C. Standard of Review

District courts are required to review complaints in civil actions filed by prisoners, *see* 28 U.S.C. § 1915A(a), and to dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Pro se pleadings, as always, will be liberally construed. *See Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### D.  Section 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Llanos-Otero alleges that he was a pretrial detainee during the events in question. The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care, *Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 403 (D.N.J. 2016), but the standard is the same as claims arising under the Eighth Amendment. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) ("we have found no reason to apply a different standard than that . . . pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment") (cleaned up). Thus, to state such a claim, a pretrial detainee must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale*, 318 F.3d at 582.

A medical need is "serious" if it: (1) "has been diagnosed by a physician as requiring treatment"; (2) "is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) is one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272–73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this element, courts consider factors such as "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 289 (D.N.J. 1998).

As to the second prong—deliberate indifference—prison officials "act deliberately indifferent to a prisoner's serious medical needs by intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (cleaned up). "There is a critical distinction between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment." *Id.* Because "mere disagreement as to the proper medical treatment" does not state a constitutional claim, when medical treatment is provided, a court should "presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Id.* at 535 (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")).

Here, Llanos-Otero has sufficiently alleged that he suffered from a "serious" medical condition, as that term has been defined by the case law. Assuming his allegations are true, his

MRSA infection was undoubtedly of sufficient severity, and there was a serious risk that very significant harm would result if medical treatment were delayed or denied.

Llanos-Otero has not, however, adequately alleged that prison officials were deliberately indifferent to that serious medical need. When I assuming his allegations are true and construe them in his favor, I find that he alleges (1) he first noticed the pimple on November 10; (2) a correctional officer, upon seeing the pimple that day, advised him to submit a request to be seen by medical; (3) the next day, that same correctional officer personally assured that Llanos-Otero would be seen by medical staff that day because his condition had worsened, even to a layman's eyes; (4) that day, he was seen by medical staff and prescribed antibiotics; (5) by either that day or the next day (the complaint is unclear), he was transported to an emergency room, where he received intravenous antibiotics and then underwent a surgical procedure; and (6) within 48 hours of returning to the facility, the antibiotic he required was approved and administered. Llanos-Otero alleges that medical staff should have sent him to the hospital sooner, and he speculates that had he been sent sooner he would have suffered less, but at bottom this is a "mere disagreement as to the proper medical treatment," *Pearson*, 850 F.3d at 534, not a plausible allegation that prison officials deliberately delayed treatment or ignored his complaints.

There is another problem with Llanos-Otero's complaint: the only defendant he names is the warden of Hudson County Correctional Facility, but his factual allegations are limited to the actions of medical staff and, apart from a high-level conclusory allegation that the warden failed to ensure the safety of detainees, he does not allege that the warden was personally involved in, or had personal knowledge of, his medical treatment. This is an additional basis upon which to dismiss the complaint, because "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 672 (2009). Rather, a supervisory official such as a warden can only be held liable if he or she "established a policy, custom, or practice that caused harm," *Hutchinson v. Bergen Cnty. Sheriff's Off.*, No. 22-993, 2022 WL 1639153, at *3 (D.N.J. May 24, 2022) (collecting authorities), or if he or she personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* (collecting authorities). Applying these standards, Llanos-Otero's one-sentence allegation that defendant Scott "allowed an insufficient level of protection" does not sufficiently allege her personal involvement in the alleged deliberate indifference to Llanos-Otero's serious medical needs.

### E. Leave to Amend

For the reasons given above, Llanos-Otero's complaint is dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). This is, however, an initial screening, and it is not sufficiently clear that amendment would be futile. Accordingly, the dismissal is without prejudice. Llanos-Otero may file, within 60 days, a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile). Any proposed amended complaint must comply with the pleading standards set forth above, including, among other requirements, identifying with specificity the individuals who are alleged to have been personally involved in Llanos-Otero's medical care.

DATED: July 13, 2023

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge

8